# Census Confidentiality and the PATRIOT Act

The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 does not require the Secretary of Commerce to disclose census information to federal law enforcement or national security officers where such disclosure would otherwise be prohibited by the Census Act.

January 4, 2010

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF COMMERCE

You have asked whether the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 ("PATRIOT Act"), as amended, may require the Secretary of Commerce to disclose census information to federal law enforcement or national security officers where such disclosure would otherwise be prohibited by the Census Act, 13 U.S.C. §§ 8, 9, 214 (2006). We have identified no provisions of the PATRIOT Act that would compel the Secretary to disclose such protected information.[1]

## I.

To help promote the public cooperation on which an accurate census largely depends, federal census statutes have long provided assurances of confidentiality to respondents. *See generally Baldrige v. Shapiro*, 455 U.S. 345, 354, 356–59 (1982). This Office has described the current Census Act confidentiality provisions as "the most recent codification of a statutory confidentiality requirement that dates back more than a century and that bars the disclosure of covered census information by census officials." *Relationship Between Illegal Immigration Reform and Immigrant Responsibility Act of 1996 and Statutory Requirement for Confidentiality of Census Information*, 2 Op. O.L.C. Supp. __, at *1 (May 18, 1999) ("IIRIRA Opinion"), *available at* http://www.usdoj.gov/olc/opinions.htm. The Census Act provides:

> Neither the Secretary [of Commerce], nor any other officer or employee of the Department of Commerce or bureau or agency thereof,

---

[1] We solicited views from the Federal Bureau of Investigation ("FBI") and the Criminal, National Security, and Civil Rights Divisions of the Department of Justice. The Criminal Division, upon review, offered no views. The FBI and the Civil Rights Division concurred with the Department of Commerce in the view that no provisions of the PATRIOT Act override the Census Act's protections for covered census information possessed by the Commerce Department. The National Security Division disagreed, contending that section 215 of the PATRIOT Act, as amended, may allow for a court order to compel the Secretary to disclose furnished census information. We address this provision and the National Security Division's views in greater detail below.

or local government census liaison, may, except as provided in section 8 or 16 or chapter 10 of this title or section 210 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998 or section 2(f) of the Census of Agriculture Act of 1997—

(1) use the information furnished under the provisions of this title [the Census Act] for any purpose other than the statistical purposes for which it is supplied; or

(2) make any publication whereby the data furnished by any particular establishment or individual under this title can be identified; or

(3) permit anyone other than the sworn officers and employees of the Department or bureau or agency thereof to examine the individual reports.

13 U.S.C. § 9(a).

The cross-referenced statutes in section 9(a) presently provide exceptions only for disclosure of transcripts or reports containing information furnished by a respondent when requested by that respondent (or his or her heir, successor, or authorized agent), *see* 13 U.S.C. § 8(a); certain "tabulations and other statistical materials" that the Secretary may produce for private parties or government agencies, provided that the disclosed materials do not reveal "the information reported by, or on behalf of, any particular respondent," *id.* § 8(b); certain address information that may be disclosed to local government census liaisons under section 16 of the Census Act, *id.* § 16; certain business data and information on business enterprises that may be shared with the Bureau of Economic Analysis and the Bureau of Labor Statistics under sections 401 and 402 of the Census Act, *id.* §§ 401, 402; certain disclosures to the Census Monitoring Board permitted by section 210 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-119, 111 Stat. 2471, 2487 (1997); and certain disclosures to the Department of Agriculture permitted by the Census of Agriculture Act of 1997, Pub. L. No. 105-113, §§ 2(f), 4(a)(1), 111 Stat. 2274–76, for the purpose of facilitating the agriculture census. In addition, section 9(b) of the Census Act exempts certain information relating to the census of governments from section 9(a)'s confidentiality protections, *see* 13 U.S.C. § 9(b), and certain other provisions outside the Census Act expressly address the confidentiality of covered census information under section 9. *See, e.g.*, 42 U.S.C. § 11608 (2006) (establishing procedures with respect to information protected by section 9 for purposes of implementing an international convention); 42 U.S.C. § 6274 (2006) (specifically permitting disclosure of certain information "without regard to" section 9); 44 U.S.C. § 2108(b) (2006) (regulating

release of certain historic census records in the custody of the Archivist of the United States).

Reinforcing the confidentiality protections of section 9, section 8(c) of the Census Act provides that "[i]n no case shall information furnished under this section"—which, as noted, authorizes the Secretary to furnish statistical tabulations of census data that "do not disclose the information reported by, or on behalf of, any particular respondent," as well as census transcripts and reports when requested by the respondent (or the respondent's heir, successor, or authorized agent)—"be used to the detriment of any respondent or other person to whom such information relates, except in the prosecution of alleged violations of this title." 13 U.S.C. § 8(c); *see also* 15 C.F.R. § 80.5 (2009) (noting this statutory prohibition). Under section 214 of the Census Act, violations of section 9 by any census employee, staff member, or local liaison are subject to criminal punishment. *See* 13 U.S.C. § 214.

Enacted into law after the September 11, 2001 attacks, the PATRIOT Act made extensive changes to existing statutes governing investigations related to terrorism, intelligence, and national security. Although some PATRIOT Act provisions were subject to a statutory sunset, Congress reauthorized provisions of the original PATRIOT Act, with amendments, in the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, 120 Stat. 192 ("Reauthorization Act"). The PATRIOT Act, as amended, authorized a number of new or modified forms of surveillance, information-gathering, and information-sharing for federal law enforcement and national security officers.[2]

---

[2] You identified for our review PATRIOT Act provisions establishing the following surveillance and information-gathering powers for certain federal officers: authority to obtain so-called "roving" wiretaps under foreign intelligence surveillance provisions, 50 U.S.C. § 1805(c)(2)(B) (2006) (containing language originating in PATRIOT Act § 206); authority to conduct surveillance of certain agents of foreign powers for longer periods than previously authorized, 50 U.S.C.A. § 1805(d) (West Supp. 2009) (containing language originating in PATRIOT Act § 207); authority for certain warrant-based seizures of voicemail messages, 18 U.S.C. §§ 2510(14), 2703(a)–(b) (including provisions originating in PATRIOT Act § 209); authority to seek court orders for production of "tangible things" relevant to certain terrorism and intelligence investigations, 50 U.S.C.A. § 1861 (West 2003 & Supp. 2009) (including provisions originating in PATRIOT Act § 215); revised standards for obtaining certain electronic surveillance warrants, 50 U.S.C.A. §§ 1804(a)(6)(B), 1823(a)(6)(B) (West 2003 & Supp. 2009) (containing language originating in PATRIOT Act § 218); and authority to seek court orders compelling production of certain educational records possessed by educational agencies and institutions for use in certain terrorism-related investigations and prosecutions, 20 U.S.C. § 1232g(j) (2006) (originating in PATRIOT Act § 507). You also identified one provision regarding information-sharing within the federal government, section 508, which authorized the Attorney General or a designee above a specified rank to apply for an ex parte court order to obtain certain confidential educational reports, records, and information possessed by the Department of Education for use in certain terrorism-related investigations and prosecutions. 20 U.S.C. § 9573(e) (2006) (containing language originating in PATRIOT Act § 508).

We have independently identified and reviewed several other information-sharing provisions of the PATRIOT Act (as amended), including provisions permitting disclosure within the federal government of certain intelligence-related grand jury matters, Fed. R. Crim. P. 6(e)(3)(D) (containing language

The PATRIOT Act includes certain express exceptions to otherwise applicable confidentiality provisions. Section 508 of the PATRIOT Act provided for authorized applications by certain high-ranking Justice Department officials for an ex parte court order requiring production of certain educational records—possessed by the Department of Education and otherwise subject to statutory confidentiality requirements—for use in certain terrorism-related investigations and prosecutions. PATRIOT Act § 508 (repealed by Pub. L. No. 107-279, §§ 401(a)(6), 403(1), 116 Stat. 1940, 1983, 1985 (2002)); 20 U.S.C. § 9573(e) (2006) (recodifying similar authorization). This provision authorized court orders "requiring" the Secretary of Education to permit the Attorney General or his designee to "collect" and "retain, disseminate, and use" these records for official purposes related to covered investigations and prosecutions, "[n]otwithstanding" statutory disclosure prohibitions that would otherwise apply to those specific records. PATRIOT Act § 508; 20 U.S.C. § 9573(e). In addition, among numerous other changes, the PATRIOT Act amended applicable laws to permit wider sharing of certain evidence collected by grand juries, *see* Fed. R. Crim. P. 6(e)(3)(D), and broader disclosure within the government, "[n]otwithstanding any other provision of law," of certain intelligence-related information obtained as part of a criminal investigation. 50 U.S.C.A. § 403-5d (West 2003 & Supp. 2009); *see also supra* note 2. None of the PATRIOT Act's provisions expressly references the Census Act or its confidentiality protections.

You have asked whether any of the information-gathering or information-sharing provisions of the PATRIOT Act, as amended, may override the confidentiality requirements of the Census Act so as to require the Commerce Secretary to disclose otherwise covered census information to federal law enforcement or national security officials. Our understanding from you is that you are not asking

---

originating in PATRIOT Act § 203(a)); provisions permitting sharing within the federal government of certain intelligence-related information contained in certain electronic intercepts, 18 U.S.C. § 2517(6) (2006) (originating in PATRIOT Act § 203(b)); provisions permitting sharing within the federal government of certain intelligence-related information "obtained as part of a criminal investigation," 50 U.S.C.A. § 403-5d (West 2003 & Supp. 2009) (containing language originating in PATRIOT Act § 203(d)); provisions authorizing the Secretary of the Treasury to share certain financial records and reports with other agencies, 12 U.S.C. §§ 3412(a), 3420(a)(2) (2006), 31 U.S.C. § 5319 (2006) (containing provisions originating in PATRIOT Act § 358); provisions requiring an entity in the Treasury Department to analyze, disseminate, and provide access to certain information relating to financial crimes, 31 U.S.C. § 310 (2006) (containing provisions originating in PATRIOT Act § 361); provisions requiring the Attorney General and FBI Director to provide the State Department and Immigration and Naturalization Service with access, for visa-related purposes, to criminal history record information in certain files, 8 U.S.C. § 1105(b) (2006) (originating in PATRIOT Act § 403(a)); provisions encouraging dissemination of information collected under certain statutory provisions "so it may be used efficiently and effectively for national intelligence purposes," 50 U.S.C. § 403-1(f)(6) (2006) (containing language originating in PATRIOT Act § 901); and provisions generally requiring "expeditious[]" disclosure to intelligence officials, pursuant to established guidelines, of foreign intelligence acquired by federal law enforcement officers "in the course of a criminal investigation," 50 U.S.C. § 403-5b (2006) (containing language originating in PATRIOT Act § 905).

us to address what effect, if any, the Census Act confidentiality provisions have on census-related information or communications that could possibly be obtained through surveillance, interception, or other means apart from a direct request to the Commerce Department. Nor are you asking us to address the effect, if any, of PATRIOT Act provisions on the confidentiality under the Census Act of census information possessed not by the Commerce Department, but by third parties, such as those furnishing census information. We have reviewed the PATRIOT Act provisions that you have identified, and we have also conducted an independent review of the statute. With one exception, we conclude that none of the provisions appears on its face to require the Secretary of Commerce to disclose census information otherwise subject to the confidentiality protection mandated by the Census Act. We therefore do not discuss the entirety of the PATRIOT Act in detail and instead turn to the one provision that, in our judgment, warrants further analysis.

In section 215 of the PATRIOT Act, Congress amended provisions of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C.A. § 1801–1885c (West 2003 & Supp. 2009), that previously authorized court orders to obtain records from specified types of businesses, *see* 50 U.S.C. § 1862 (2000), to permit orders for production of "any tangible things" for use in certain terrorism and intelligence investigations, *see* 50 U.S.C.A. § 1861(a)(1) (West 2003 & Supp. 2009). As amended by the Reauthorization Act and two other statutes, *see* Reauthorization Act § 106; USA PATRIOT Act Additional Reauthorizing Amendments Act of 2006, Pub. L. No. 109-178, §§ 3–4, 120 Stat. 278, 278–81; Intelligence Authorization Act for Fiscal Year 2002, Pub. L. No. 107-108, § 314(a)(6), 115 Stat. 1394, 1402, section 215 now provides:

> Subject to paragraph (3) [which requires especially high-level approval within the FBI for certain categories of records], the Director of the Federal Bureau of Investigation or a designee of the Director (whose rank shall be no lower than Assistant Special Agent in Charge) may make an application for an order requiring the production of any tangible things (including books, records, papers, documents, and other items) for an investigation to obtain foreign intelligence information not concerning a United States person or to protect against international terrorism or clandestine intelligence activities, provided that such investigation of a United States person is not conducted solely upon the basis of activities protected by the first amendment to the Constitution.

50 U.S.C.A. § 1861(a)(1).[3]

---

[3] The Reauthorization Act provided that the FISA provisions amended by section 215 would revert to their pre-PATRIOT Act form on December 31, 2009, but would remain in effect "[w]ith respect to

## II.

Section 215, by its plain terms, provides the FBI with broad authority to obtain "tangible things (including books, records, papers, documents, and other items)" for use in certain terrorism and intelligence investigations.[4] And, as a general matter, the PATRIOT Act and its legislative history suggest an intention on the part of Congress to provide the federal government with substantial new powers to combat terrorism and protect national security. *See, e.g.*, H.R. Rep. No. 109-174, at 7 (2005) (conference report on Reauthorization Act describing PATRIOT Act as intended "[t]o better equip Federal law enforcement and the intelligence community with the resources necessary to confront . . . modern threats"); H.R. Rep. No. 107-236, pt. 1, at 41 (2001) (committee report on predecessor bill to the PATRIOT Act describing legislation as "provid[ing] enhanced investigative tools and improv[ing] information sharing for the law enforcement and intelligence communities to combat terrorism and terrorist-related crimes").

There is, however, a long history of congressional enactments providing broad confidentiality protection to census information. The Supreme Court has construed sections 8 and 9 of the Census Act to "embody explicit congressional intent to preclude *all* disclosure of raw census data reported by or on behalf of individuals," *Baldrige*, 455 U.S. at 361, and lower courts have likewise deemed it "'abundantly clear that Congress intended both a rigid immunity from publication or discovery and a liberal construction of that immunity that would assure confidentiality,'" *Carey v. Klutznick*, 653 F.2d 732, 739 (2d Cir. 1981) (quoting *McNichols v. Klutznick*, 644 F.2d 844, 845 (10th Cir. 1981)); *see also United States v. Bethlehem Steel Corp.*, 21 F.R.D. 568, 569–70, 572 (S.D.N.Y. 1958) (holding that "the purpose to protect the privacy of the information furnished to the Government is so clear and the public policy underlying the purpose so compelling that absent a clear Congressional grant, there is no basis upon which to direct the Department of Commerce to make available to the Department of Justice or to any person the reports here sought"). Moreover, Congress, far from disavowing this judicial construction, has amended the Census Act several times—including through the addition of further express exceptions to section 9—without limiting or repealing

---

any particular foreign intelligence investigation that began before the date on which [these] provisions . . . cease to have effect, or with respect to any particular offense or potential offense that began or occurred before the date on which such provisions cease to have effect." *See* Reauthorization Act § 102(b). Congress recently postponed the December 31, 2009 sunset in the Reauthorization Act until February 28, 2010. *See* Department of Defense Appropriations Act, 2010, Pub. L. No. 111-118, § 1004(a), 123 Stat. 3409, 3470. Legislation pending in Congress would further reauthorize section 215 with certain amendments. *See, e.g.*, S. 1692, 111th Cong. (as reported by S. Comm. on the Judiciary, Oct. 13, 2009).

[4] For purposes of this opinion, we assume without deciding that, even though section 215 is not expressly cast as an intragovernmental information-sharing provision, section 215 orders may require "production" of "tangible things" not only from parties outside the federal government, but also from agencies within it.

the courts' expansive interpretation of the Act's prohibition (absent a clear exception) on disclosure of covered census information possessed by the Commerce Department.[5]

The question, therefore, is whether the broad but general language in section 215 should be construed to override the well-established confidentiality protections set forth in the Census Act, even though section 215 contains no express and specific statement indicating an intention to do so. Of course, strictly speaking, the plain text of section 215 could be read to conflict with the confidentiality provision of the Census Act, as the phrase "any tangible things" could be construed to encompass census records. Nonetheless, we think section 215 is better read not to have this significant consequence, and prior executive branch precedent addressing when and whether a subsequent statute should be construed to cut back on the confidentiality of census records supports that conclusion.

Indeed, for more than sixty years, the Executive Branch has consistently employed a strong presumption that statutes affecting access to information in general should not be construed to overcome the specific protections afforded to covered census information by the Census Act. In a 1944 Attorney General opinion, for example, we concluded that a statute generally requiring transfer of records to the National Archives did not remove statutory confidentiality protections applicable to census records. *Confidential Treatment of Census Records*, 40 Op. Att'y Gen. 326, 328. The statute at issue there provided that "'[a]ll archives or

---

[5] *See, e.g.*, Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-119, 111 Stat. 2471, 2487 (1997); Census of Agriculture Act of 1997, Pub. L. No. 105-113, §§ 2(f), 4(a)(1), 111 Stat. 2274–76; Census Address List Improvement Act of 1994, Pub. L. No. 103-430, § 2(b), 108 Stat. 4393, 4394; Foreign Direct Investment and International Financial Data Improvements Act of 1990, Pub. L. No. 101-533, § 5(b)(2), 104 Stat. 2344, 2348; Act of Oct. 15, 1962, Pub. L. No. 87-813, 76 Stat. 922. Indeed, the legislative history of census-related enactments includes repeated acknowledgments of a strong statutory policy of census confidentiality. *See, e.g.*, S. Rep. No. 105-141, at 4 (1997) (describing express exception added to section 9 as "grant[ing] the Secretary of Commerce the authority to provide information [covered by that section] to the Secretary of Agriculture"); H.R. Rep. No. 105-296, at 4 (1997) (same); S. Rep. No. 93-1183, at 70 (1974) (committee report on federal privacy legislation describing census statutes as "prohibit[ing] publication of data gathered by the [Census] Bureau in identifiable form and strictly govern[ing] confidentiality"); H.R. Rep. No. 93-1416, at 12 (1974) (committee report on federal privacy legislation describing the "[l]aws relating to the Bureau of the Census" as "very strict, limiting access to such records only to Census employees"); S. Rep. No. 87-2218, at 1 (1962) (noting that "[o]riginal reports filed with the Bureau of the Census are confidential" under census statutes); H.R. Rep. No. 60-960, at 23 (1908) (describing predecessor to section 9 as intended to provide "a more effective guaranty than heretofore of the confidential character of the returns as needed in many cases and desirable in all to enlist that public confidence without which census inquiries must fail"); *see also* Proclamation No. 1898 (Nov. 22, 1929) (proclamation by President Hoover) ("No person can be harmed in any way by furnishing the information required [by the census]. The Census has nothing to do . . . with the enforcement of any national, state, or local law or ordinance."); *see generally Baldrige*, 455 U.S. at 356–58 (reviewing history of census statutes and concluding that the history "reveals a congressional intent to protect the confidentiality of census information by prohibiting disclosure of raw census data reported by or on behalf of individuals").

records belonging to the Government of the United States (legislative, executive, judicial, and other) shall be under the charge and superintendence of the Archivist to th[e] extent" of, among other things, permitting the Archivist "to make regulations for the arrangement, custody, use, and withdrawal of material deposited in the National Archives Building.'" *Id.* at 327 (quoting Act of June 19, 1934, ch. 668, § 3, 48 Stat. 1122, 1122). The statute further provided that "'[a]ll Acts or parts of Acts relating to the charge and superintendency, custody, preservation, and disposition of official papers and documents of executive departments and other governmental agencies inconsistent with the provisions of this Act are hereby repealed.'" *Id.* (quoting Act of June 19, 1934, ch. 668, § 11, 48 Stat. 1122, 1124). The Acting Attorney General concluded that census records could be transferred to the custody of the Archivist under these provisions. However, even in the face of language expressly repealing "*[a]ll*" inconsistent federal statutes, the Acting Attorney General determined that the Archivist lacked the discretion—otherwise provided as part of the authorizing statute creating the Office of the Archivist—to allow for the dissemination and use of the transferred census records. Census records transferred to the custody of the Archivist remained subject to confidentiality statutes specific to census information, as "[i]t would require very clear language in a general statute relating to the custody of records to justify attributing to the Congress an intention to depart from" the policy of census confidentiality. *Id.* at 328.[6]

---

[6] In 1950, Congress amended the statutes governing the National Archives of the United States to provide, among other things, that

> [w]henever any records the use of which is subject to statutory limitations and restrictions are . . . transferred [to the National Archives], permissive and restrictive statutory provisions with respect to the examination and use of such records applicable to the head of the agency from which the records were transferred or to employees of that agency shall thereafter likewise be applicable to the Adminstrator [of General Services, who oversaw the National Archives under the statute], the Archivist, and to the employees of the General Services Administration.

Federal Records Act of 1950, ch. 849, § 507(b), 64 Stat. 583, 587; *see also* Pub. L. No. 90-620, 82 Stat. 1238, 1288 (1968) (codifying similar provision at 44 U.S.C. § 2104). The amended statute provided, however, that such statutory restrictions would remain in effect for fifty years unless the Administrator extended the restrictions for a further period. *See* Federal Records Act § 507(b); *see also* Pub. L. No. 90-620, 82 Stat. 1238, 1288 (codifying similar provision at 44 U.S.C. § 2104). In 1973, this Office advised that the "plain language" and "history" of these provisions expressly governing agency records "constitute[d]" the "very clear language" required to supersede census confidentiality under the 1944 Attorney General opinion, and thus that the Archivist had authority under the statute to disclose census records after fifty years notwithstanding a 1952 agreement between the Census Bureau and the Archivist that barred disclosure of census records for seventy-two years. *See* Memorandum for William G. Casselman II, General Counsel, General Services Administration, from Robert G. Dixon, Jr., Assistant Attorney General, Office of Legal Counsel, at 7, 8 (June 14, 1973).

In further amendments to these statutes in 1978, Congress generally shortened to thirty years the period during which statutorily protected documents must remain confidential, but also provided specifically that "any release" of "census and survey records of the Bureau of the Census containing data identifying individuals enumerated in population censuses" would be governed by the 1952

The expectation that Congress would not cut back on the confidentiality of census records without doing so in a very clear manner has governed executive branch interpretation in subsequent decades. For example, the Acting Attorney General concluded in 1962 that section 9's confidentiality protections applied to certain surveys then authorized by the Census Act but exempt from Census Act provisions penalizing false responses and failures to respond (and thus considered "voluntary"). *Confidentiality of "Voluntary" Reports Under the Census Laws*, 42 Op. Att'y Gen. 151, 151–52. Although pre-1954 census statutes had expressly provided that such surveys were subject to statutory confidentiality provisions and the 1954 census statute (which included section 9(a) in substantially similar form to the Census Act today) included no such express cross-reference, the Acting Attorney General observed that "a change in the law so far-reaching as to deprive voluntary reports of their confidential nature certainly would have been pointed out and explained in" the legislative history. *Id.* at 155. Indeed, the Acting Attorney General found "no uncertainty" in the language of section 9. *Id.* Noting that section 9 included other express exceptions but otherwise applied to all information furnished "under this title," the Acting Attorney General concluded that "[i]f Congress had sought to exempt the replies to voluntary surveys from the operation of 13 U.S.C. 9(a), it certainly would have done so expressly." *Id.*

Finally, in a more recent opinion, this Office determined that a statute plainly intended to enhance the ability of government officials to share immigration status information with immigration authorities did not override the Census Act's protections for covered census information possessed by the Commerce Department. IIRIRA Opinion. The statute at issue prohibited any federal, state, or local government entity or official from restricting any government entity or official from "sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." *Id.* at *4 (quoting 8 U.S.C.A. § 1373(a) (West 1999)). Although the opinion rested primarily on a reading of the statute that construed the restrictions on "government entities" as not encompassing Congress's enactment of census confidentiality provisions*, see id*. at *6, this Office, in support of this conclusion, reiterated that "[i]n light of the federal government's longstanding commitment to confidentiality in this area, there is every reason to expect that

---

agreement and any amendments to that agreement "now or hereafter entered into between the Director of the Bureau of the Census and the Archivist of the United States." *See* Pub. L. No. 95-416, 92 Stat. 915 (1978) (amending 44 U.S.C. § 2104); *see also* 44 U.S.C. § 2108 (2006) (codifying similar provisions). Consistent with Congress's longstanding policy of census confidentiality, the House Committee on Government Operations explained the need for a specific protection for census records by noting that "[t]he committee believes that the right of American citizens to assert a right of privacy over information provided in census questionnaires far outweighs the general public's right to have access to that information during the lifetime of the individual citizen." H.R. Rep. No. 95-1522, at 3 (1978); *see also* S. Rep. No. 95-710, at 2 (1978) (explaining that this provision "addresses the issue of premature release of census records information").

Congress would have spoken with particular clarity if it had intended to cut back on the scope of 13 U.S.C. § 9(a) in enacting" a new statute. *Id.* at *11. We thus concluded that "the absence of a reference in either statute to the other suggests that the text of 13 U.S.C. § 9(a) should be construed to mean just what it says, and that [the immigration statute] should be understood to have left in place the confidentiality requirement that 13 U.S.C. § 9(a) establishes." *Id.* at 8–9 (footnote omitted).

In light of this consistent precedent, we would construe section 215 to override the preexisting Census Act protections for covered census information possessed by the Commerce Department only if the evidence of congressional intention compelled such a conclusion. Here, however, the evidence does not compel such a conclusion.

Section 215 makes no reference to the census or the Census Act. And although Congress has amended section 9 of the Census Act on several occasions to establish exceptions, it has not added an express exception for section 215 orders in the wake of that provision's enactment. Nor is there language in section 215 like that contained in the statute addressed in the 1944 Attorney General opinion concerning the archivist's role as custodian of governmental records. There, the statute expressly stated that the authority of the archivist to take custody of records extended to all records "belonging to the Government of the United States (legislative, executive, judicial, and other)" and for purposes of carrying out that authority, "all" inconsistent federal statutes were repealed. *Confidential Treatment of Census Records*, 40 Op. Att'y Gen. at 327. By contrast, section 215 not only does not expressly encompass "all" governmental records (it simply permits orders requiring production of "tangible things" in general); it also includes no express repeal of any federal statute prohibiting disclosure of such information. Similarly, section 215 contains no language like that identified in this Office's 1999 opinion on the relationship between the immigration disclosure provision and the Census Act's confidentiality provisions, in which we noted the absence of express language such as "notwithstanding any provision of law . . . [this provision provides for the disclosure of information] without restriction" that could indicate an intention to override the longstanding statutory protections for census information possessed by the Department of Commerce. IIRIRA Opinion at *5.

The PATRIOT Act does include a severability clause requiring that PATRIOT Act provisions be given "maximum effect" if deemed invalid or unenforceable in part or as applied, but this provision does not indicate congressional "intent that [section 215] be construed broadly to give it maximum effect," as the National Security Division has suggested to us in its views. The full text of this provision states:

> Any provision of this Act held to be invalid or unenforceable by its terms, or as applied to any person or circumstance, shall be construed so as to give it the maximum effect permitted by law, unless

such holding shall be one of utter invalidity or unenforceability, in which event such provision shall be deemed severable from this Act and shall not affect the remainder thereof or the application of such provision to other persons not similarly situated or to other, dissimilar circumstances.

PATRIOT Act § 2 (reprinted at 18 U.S.C. § 1 note (2006)). By its plain terms, this provision applies only when PATRIOT Act provisions are "*held* to be invalid or unenforceable" in whole or in part (emphasis added); it does not otherwise establish any special rule of construction for the PATRIOT Act or manifest an intention to repeal, absent judicial invalidation, any provision of prior law. *See also, e.g.*, 147 Cong. Rec. 20,685 (2001) (section by section analysis of PATRIOT Act conference report included in the record by Sen. Leahy describing this provision as "provid[ing] that any portion of this Act found to be invalid or unenforceable by its terms, or as applied to any person or circumstance, shall be construed to give it the maximum effect permitted by law and that any portion found invalid or unenforceable in its entirety shall be severable from the rest of the Act").

Given the established interpretive approach to repeal of the Census Act's confidentiality provisions, the absence of any express repeal language in section 215 is significant, especially because other sections of the PATRIOT Act expressly revise statutory restrictions on certain other categories of confidential information.

Section 508 provides a striking comparison. Much like section 215, this provision authorized applications by certain high-ranking Justice Department officials for an ex parte court order requiring production of certain information (specifically, certain educational records possessed by the Department of Education) for use in certain terrorism-related investigations. PATRIOT Act § 508 (repealed by Pub. L. No. 107-279, §§ 401(a)(6), 403(1), 116 Stat. 1940, 1983, 1985 (2002)); 20 U.S.C. § 9573(e) (recodifying similar authorization). But in contrast to section 215, which simply authorizes orders for "production" of tangible things in general, section 508 expressly established a mechanism for information-sharing between federal agencies, and expressly repealed applicable confidentiality statutes, using precisely the sort of language—"notwithstanding [other specified provisions]," PATRIOT Act § 508; 20 U.S.C. § 9573(e)—that we suggested in our IIRIRA opinion would indicate congressional intent to repeal confidentiality protections of the Census Act, IIRIRA Opinion at *5; *see* PATRIOT Act § 508; 20 U.S.C. § 9573(e). Moreover, at least one other PATRIOT Act provision likewise applies "[n]otwithstanding" other specified provisions of law. *See* PATRIOT Act § 507 (codified at 20 U.S.C. § 1232g(j) (2006)) (authorizing court orders to obtain certain records from educational institutions or agencies "[n]otwithstanding subsections (a) through (i) of this section or any provision of State law"). And, as noted, the PATRIOT Act explicitly modified certain other confidentiality protections, such as grand jury secrecy, to permit wider sharing of certain categories of

sensitive information within the federal government. *See, e.g.*, PATRIOT Act § 203(a)(1) (similar provision now codified at Fed. R. Crim. P. 6(e)) (permitting disclosure of certain intelligence-related grand jury matters); *id.* § 203(d) (including language codified at 50 U.S.C.A. § 403-5d (West 2003 & Supp. 2009)) (permitting sharing of certain information obtained as part of a criminal investigation). Section 508 and such other provisions explicitly modifying restrictions on information-sharing or disclosure show at the very least that Congress was aware of specific federal confidentiality provisions and could have drafted explicit authority to overcome Census Act prohibitions on information-sharing had it wished to do so.[7]

Our conclusion is further reinforced by prior Office precedent construing generally applicable information-sharing statutes. In these instances, we applied a similarly strong presumption of confidentiality in concluding that such measures did not override more specific confidentiality protections, even though as a matter of plain text the terms of the purportedly overriding statute could have been construed to be inconsistent with the confidentiality provisions at issue, just as is arguably the case here.

In *GAO Access to Trade Secret Information*, 12 Op. O.L.C. 181, 182 (1988) ("*GAO Access*"), for example, we considered whether the Food and Drug Administration ("FDA") could provide trade secret information to the Comptroller General. The potentially overriding statute required "[e]ach agency" to "give the Comptroller General information the Comptroller requires about the duties, powers, activities, organization, and financial transactions of the agency," *id.* (quoting 31 U.S.C. § 716(a) (1982)). A separate statute, however, barred the FDA from "revealing, other than to the Secretary [of Health and Human Services] or officers or employees of [the Department of Health and Human Services], or to the courts when relevant in any judicial proceeding under [other provisions of the same statute], any information acquired under [specified sections of that statute] concerning any method or process which as a trade secret is entitled to protection." *Id.* at 181 (quoting 21 U.S.C. § 331(j) (1982)). At the outset, we observed that the FDA trade secrets statute was "clear on its face" and "expressly provides that trade secret information may not be disclosed outside [the Department of Health and Human Services] with one exception: such information may be disclosed to a court in a judicial proceeding under the [statute]." *Id.* We then observed that a prior Attorney General opinion concluded, based in part on longstanding Executive Branch interpretation, that the FDA trade secrets statute did not allow for an implied exception for disclosure of covered information to Congress. *Id.* at 181–82 (discussing *Federal Food, Drug & Cosmetic Act—Prohibition on Disclosure of Trade Secret Information to a Congressional Committee*, 43 Op. Att'y Gen. 116

---

[7] We do not consider here whether and to what extent section 215 orders may also reach educational records (whether or not subject to production under section 508) or any other confidential information not protected by the Census Act.

(1978)). Accordingly, we concluded that the statute generally requiring disclosure of information to the Comptroller General did not supersede the statute specifically protecting the confidentiality of trade secrets. *Id.* at 182. "Since [the trade secrets statute] is a specific statute directly addressing one executive branch agency's handling of trade secret information, while [the Comptroller General statute] is a general statute addressed to all kinds of information in possession of the executive branch, [the trade secrets statute] controls in the absence of congressional intent to the contrary." *Id.* at 182–83.

Similarly, in *Disclosure of Confidential Business Records Obtained Under the National Traffic and Motor Vehicle Safety Act*, 4B Op. O.L.C. 735 (1980) ("*Business Records*"), we considered whether provisions in the Federal Reports Act, 44 U.S.C. § 3508 (1976), dealing with "the general matter of the intragovernmental exchange of information," 4B Op. O.L.C. at 736, were applicable to confidential information and trade secrets protected by the National Traffic and Motor Vehicle Safety Act ("Safety Act"), 15 U.S.C. 1401 (1976). The Safety Act subjected the mandatory reporting of certain safety-related information to confidentiality guarantees by providing that officers and employees of the safety agency could not "publish[], divulge[], disclose[], or make[] known" such information "in any manner or to any extent not authorized by law." 4B Op. O.L.C. at 735–36 & nn. 1–2. In concluding that the general provisions of the Federal Reports Act did not override the specific protections of the Safety Act, *id.* at 738, we analogized the Safety Act reports to census records, observing that confidentiality served the purposes of the statute because Safety Act respondents, like census respondents, may "fear, possibly even more [than disclosure to the public or competitors], the disclosure of [reported] information to regulatory or law-enforcing agencies," *id.* at 737. Thus, we observed, it "may be anticipated that firms will be less willing to submit correct and complete information under the Safety Act if they must expect that this information will be shared with [federal regulatory] agencies." *Id.* at 737–38.

Much like the trade secrets statute addressed in our *GAO Access* opinion, section 9 of the Census Act "expressly" protects covered census information from disclosure and has long been understood to bar the dissemination by the Commerce Department of such information outside the Commerce Department except when authorized by a clear statutory exception. 12 Op. O.L.C. at 181. Moreover, much as the trade secrets statute at issue in our *GAO Access* opinion specifically addressed "one executive branch agency's handling of" a specific category of information, while the Comptroller General statute broadly covered "all kinds of information in possession of the executive branch" that would be useful for particular investigations, *id.* at 182–83, so, too, here the Census Act's protections are specific to a very narrow subset of records—covered census information— relative to the broad category of "tangible things" covered by section 215. Likewise, the compliance concerns our *Business Records* opinion relied upon in concluding that disclosure "would be contrary to the statutory intent and contrary

to the purposes [the statute] was designed to achieve" seem equally applicable—as the *Business Records* opinion itself recognized—to census information protected by the Census Act. 4B Op. O.L.C. at 738.

In concluding that section 215 does not override the relevant census provisions, we do not mean to suggest that section 215 may not be read to repeal any federal statute that protects the confidentiality of information. Our analysis is limited strictly to the case of census information in the possession of the Commerce Department, in light of the strong presumption against repeal of those confidentiality protections that has long been applied to that category of information. Indeed, we note that we have identified nothing in the legislative history of section 215 indicating any intent on the part of Congress to touch upon protected census information, even though other types of sensitive information encompassed by the terms of section 215 were specifically addressed and identified as potentially covered by the provision.

For example, in the Reauthorization Act Congress amended section 215 to require especially high-level approval within the FBI for applications relating to certain categories of records—specifically, "library circulation records, library patron lists, book sales records, book customer lists, firearms sales records, tax return records, educational records, or medical records containing information that would identify a person." 50 U.S.C.A. § 1861(a)(3). The Reauthorization Act conference report describes these protections as applying to "certain sensitive categories of records." H.R. Rep. No. 109-333, at 91 (2005) (Conf. Rep.). Notably, however, the report does not mention census records, even though the long history of statutory confidentiality protections for census records possessed by the Commerce Department suggests that Congress would also have considered such records "sensitive" had it had them in mind as being subject to disclosure under section 215.

Similarly, in debates regarding the original PATRIOT Act, there is no mention of census records, even though various other types of records are mentioned. In particular, Senator Feingold unsuccessfully offered a floor amendment that would have limited section 215's scope to records held by a "business" and expressly prevented disclosure under section 215 of records "protected by any Federal or State law governing access to the records for intelligence or law enforcement purposes." 147 Cong. Rec. 19,530–31 (2001). Although supporters of Senator Feingold's amendment raised concerns that section 215 could require the disclosure of other forms of sensitive personal information, they did not mention census information in their floor statements, much less suggest that without the proposed amendment section 215 would repeal Census Act confidentiality protections. *See, e.g.*, *id.* (statement of Sen. Feingold) (expressing concern that without the amendment "all *business* records can be compelled to be produced [under section 215], including those containing sensitive personal information such as medical records from hospitals or doctors, or educational records, or records of what books

someone has taken out of the library") (emphasis added); *id.* at 19,532 (statement of Sen. Cantwell) ("this legislation could circumvent or supersede Federal and State privacy laws that protect student records, library records, and health records not previously admissible under FISA"). And in a floor statement opposing this amendment, Senator Hatch likewise made no reference to the Census Act (or indeed any other specific federal confidentiality statute). He simply observed that the amendment would "allow[] a host of state-law provisions to stand in the way of national security needs" and "condition the issuance of the court order [under section 215] on a myriad of federal and state-law provisions," thus "making investigations to protect against international terrorism more difficult than investigations of certain domestic criminal violations." *Id.* at 19,532. The silence as to the statutory protections for the confidentiality of census information is significant, as we think it fair to say here what the Acting Attorney General said with respect to the confidentiality of voluntary census records in his 1962 opinion—that "a change in the law so far-reaching as to deprive voluntary reports of their confidential nature certainly would have been pointed out and explained in" the legislative history. *Confidentiality of "Voluntary" Reports*, 42 Op. Att'y Gen. at 155.

\* \* \* \* \*

We therefore conclude that section 215 should not be construed to repeal otherwise applicable Census Act protections for covered census information such that they could require their disclosure by the Department of Commerce. Because no other PATRIOT Act provision that you have identified, nor any such provision that we have separately reviewed, would appear to have that effect, we agree that the PATRIOT Act, as amended, does not alter the confidentiality protections in sections 8, 9, and 214 of the Census Act in a manner that could require the Secretary of Commerce to disclose such information.

JEANNIE S. RHEE
*Deputy Assistant Attorney General*
*Office of Legal Counsel*